**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-00391-STV

SOMBOUNE VIRACHAK,

      Petitioner,

v.

JUAN BALTAZAR;
ROBERT HAGAN;
TODD LYONS;
KRISTI NOEM; and
PAM BONDI,

      Respondents.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter is before the Court on Petitioner Somboune Virachak's Petition for Writ of Habeas Corpus (the "Petition") [#1]. The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [#7] In his Petition, Mr. Virachak seeks a writ of habeas corpus under 28 U.S.C. § 2243, challenging his detention in Immigration and Customs Enforcement ("ICE") custody. [#1] Mr. Virachak seeks a writ ordering Respondents to release him from ICE custody on the same terms of supervision as were in place prior to his detention and enjoining Respondents from removing or attempting to remove Mr. Virachak to a third country or a country to which his removal has been withheld in violation of the Constitution as well as statutory and regulatory procedures. [*Id.* at 25] For the following reasons, Mr. Virachak's Petition is **GRANTED**.

## I.    BACKGROUND

The parties do not appear to dispute most of the material facts of Mr. Virachak's immigration history.  [See ##1 at ¶¶ 48-59; 9 at 2-4]  The Court notes where the material facts differ.

Mr. Virachak is a 41-year-old man born to Laotian parents in a refugee camp in Thailand.  [##1 at ¶ 48; 9 at 2]  He entered the United States lawfully as a refugee before his first birthday.  [##1 at ¶¶ 1, 11, 48; 9 at 2]

In 2013, Mr. Virachak pled guilty to charges related to controlled substances in Wyoming.[1]  [##1 at ¶ 49; 9 at 2]  Following the sentence, he was taken into ICE custody in 2016.  [##1 at ¶ 49; 9 at 2]  An Immigration Judge ("IJ") ordered Mr. Virachak removed from the United States to Laos on July 12, 2016.  [##1 at ¶ 50; 9 at 3]  On July 27, 2016, ICE submitted a travel document request to the government of Laos on Mr. Virachak's behalf.  [##9 at 3; 10 at 2]  About two weeks later, the government of Laos declined to issue a travel document to Mr. Virachak.  [##9 at 3; 10 at 2]  Mr. Virachak was released from ICE custody on an order of supervision on October 11, 2016.  [##1 at ¶ 50; 9 at 3]

Under the order of supervision, Mr. Virachak was required to check in with ICE once per year.[2]  [#1 at ¶ 51]  He attended each check-in until September 2025, when he travelled to the check-in location and discovered that ICE no longer did check-ins at that office.  [*Id.* at ¶ 52]  On October 27, 2025, a letter was signed and, at some point, was mailed to Mr. Virachak which instructed him to appear at the ICE Office in Centennial,

---

[1] Respondents note that Mr. Virachak also has two convictions for Driving Under the Influence which occurred in 2008 and 2009.  [#9 at 2]

[2] Petitioner provides further information about the events leading up to his most recent ICE arrest.  Respondents do not contest or otherwise comment on these events in their Response.

Colorado on November 1, 2025, for an in-person check-in. [*Id.* at ¶ 53] The letter made no reference to an order of supervision. [*Id.*] Mr. Virachak did not receive the letter until after November 1, 2025. [*Id.*]

On January 7, 2026, ICE arrested Mr. Virachak as he was leaving his home for work. [##1 at ¶ 54; 9 at 3] Mr. Virachak was transported to the ICE detention facility in Aurora, Colorado. [#1 at ¶ 56; 9 at 4] Though Respondents indicate that Mr. Virachak's order of supervision was revoked at this time [#9 at 3], Mr. Virachak alleges that during the arrest, ICE did not indicate that Mr. Virachak had violated his order of supervision or that the order of supervision was being revoked. [#1 at ¶ 55] Mr. Virachak alleges that no ICE officer has provided Mr. Virachak with any information regarding the revocation of the order of supervision, indicated that Mr. Virachak was deemed to be a threat to public safety, or indicated that ICE has arranged for Mr. Virachak's removal to any country. [*Id.* at ¶ 58] Respondents state that on February 8, 2026, they provided Mr. Virachak with a Notice of File Custody Review, which advised him that ICE would review his custody status and potential for release on an order of supervision. [#9 at 4] The Notice also advised Mr. Virachak of some of the criteria that ICE will consider when deciding whether to release or continue to detain Mr. Virachak and that Mr. Virachak may submit documents to support his release. [*Id.*] Respondents state that ICE submitted a travel document to the government of Laos on behalf on Mr. Virachak on February 25, 2026, but no response has yet been received. [*Id.*] Respondents indicate that ICE is not currently pursuing third-country removal. [*Id.*]

The Petition includes six claims. First, Mr. Virachak asserts a claim for unlawful indefinite detention in violation of 8 U.S.C. § 1231 and the Due Process Clause of the

Fifth Amendment to the United States Constitution.  [#1 at ¶¶ 60-64]  Second, he asserts an "as-applied challenge" for violation of his Fifth Amendment right to Due Process.  [*Id.* at ¶¶ 65-70]  Third, he asserts a Substantive Due Process claim for violation of his Fifth Amendment rights.  [*Id.* at ¶¶ 71-77]  Fourth, he asserts a Procedural Due Process claim for violation of his Fifth Amendment rights.  [*Id.* at ¶¶ 78-87]  Fifth, he asserts a claim for violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702(2)(A), (B).  [*Id.* at ¶¶ 88-95]  Sixth, Mr. Virachak brings a claim for lack of adequate notice and a meaningful opportunity to present a fear-based claim in violation of the Fifth Amendment of the United States Constitution and the APA.  [*Id.* at ¶¶ 96-102]  Respondents filed a response opposing all of Mr. Virachak's asserted relief [#9] and Mr. Virachak replied [#10].

II.    **LEGAL STANDARD**

A.  **Habeas Corpus under 28 U.S.C. § 2241**

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025).  "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement."  *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

"Habeas corpus proceedings under § 2241 'remain available as a forum for statutory and constitutional challenges to post-removal-period detention' effectuated

under § 1231(a)(6)." *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *3 (D. Colo. Mar. 8, 2024) (quoting *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024)).  "[A] noncitizen may bring a habeas petition under this section if his or her confinement violates the Fifth Amendment's guarantee of due process." *Id.* (citing *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211, at *3 (D. Colo. July 2, 2019)).

### B.  Post-Removal Detention under 8 U.S.C. § 1231

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A). This 90-day period is referred to as the "removal period."  *Id.*  Generally, "[i]f the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under" certain regulations.  *Id.* § 1231(a)(3).  Those regulations, which govern the release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13.  Both regulations were intended to "provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release."  *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

Under 8 C.F.R. § 241.4, a noncitizen who has previously been approved for supervised release may have such supervised release revoked if: "(i) the purposes of the release have been served; (ii) the [noncitizen] violates any condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or (iv) the conduct of the [noncitizen], or any other circumstance, indicates

5

that release would no longer be appropriate." 8 C.F.R. §§ 241.4(l)(2)(i)-(iv). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole." *Id.* § 241.4(l)(1). "The [noncitizen] will be afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Additional special review procedures apply to noncitizens who "are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period" when the noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* § 241.13(a). Noncitizens who are released under an order of supervision under this section may be returned to custody if they violate any of the conditions of release. *Id.* § 241.13(i)(1). Additionally, release under this section may be revoked "if, on account of changed circumstances" it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). In either case, "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release." *Id.* § 241.13(i)(3). An interview must be "promptly" conducted in which the noncitizen has the "opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Certain noncitizens, including those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal, "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). "The text of the INA does not contain an express limit on the duration a noncitizen may be detained under its authority." *Juarez*, 2024 WL 1012912, at *3.

6

### III.    ANALYSIS

Mr. Virachak argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i) [#1 at ¶¶ 73, 91] and (2) the United States Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) [#1 at ¶ 61].  Mr. Virachak also argues that ICE may not remove him to a third country without providing him with adequate notice and an opportunity to be heard.  [*Id.* at ¶¶ 69, 101]

It is unclear pursuant to which regulation–8 C.F.R. § 241.4 or § 241.13–Mr. Virachak's release was revoked and he was re-detained.  Given that Mr. Virachak asserts violations of both regulations, it does not appear that he knows which regulation applies to his case, but Respondents seem to indicate that the proper regulation to be considered is 8 C.F.R. § 241.4.  [*See* #9 at 8 ("Petitioner should at most be given what the text of the relevant regulations–here, 8 C.F.R. § 241.4(l)–requires.")]  Regardless, Respondents do not meaningfully respond to Petitioner's arguments concerning ICE's regulatory violations.  Indeed, they appear to concede that they violated their own regulations.  [*Id.* ("But the Supreme Court in [*Accardi v. Shaughnessy*, 347 U.S. 260 (1954)] did not determine the sweeping principle that agencies violate due process any time they fail to follow some regulation in a way that affects a party's rights.")] And Respondents certainly do not contend that they provided Mr. Virachak with notice of the reasons his supervised release was revoked or that they did, or even intend to, promptly conduct an interview with Mr. Virachak.

Instead, Respondents argue that these regulatory violations were not prejudicial. [#9 at 9]  The Court disagrees.  "Respondents' failure to comply with the governing regulation is prejudicial in that, if the regulation had been followed, Petitioner would have

7

had a meaningful timely opportunity to no longer be detained." *Nguyen v. Archambeault*, No. CV-25-04107-PHX-SHD (ASB), 2025 WL 3250922, at *1 (D. Ariz. Nov. 21, 2025). The delay of over two months has deprived Mr. Virachak of the opportunity to challenge the reasons for his detention.

Respondents also contend that "[Mr. Virachak] has not shown any procedural due-process violation and, even if established, that would not warrant immediate release." [#9 at 7]  Respondents argue that a procedural due process claim must concern procedures that are required by the Constitution, not the substance of an individual's detention.  [*Id.* at 7-8]  And they contend that the proper remedy, in the event that a procedural due process violation was established, is additional process rather than immediate release from custody.  [*Id.* at 8]

Respondents' arguments have been rejected by courts across the country.  As these courts have held, "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 232 F.3d 258, 262 (1st Cir. 2000)).  Based on this principle, the vast majority of courts have found that where respondents fail to provide notice of revocation and conduct an interview with a petitioner as is required by 8 C.F.R. § 241.4(l) and § 241.13(i), the "[p]etitioner's immediate release is required to return him to the status quo ante—the last uncontested status which preceded the pending controversy." *Archambeault*, 2025 WL 3250922, at *1 (quotation omitted); *see also Izquierdo Navarro v. Bondi*, No. 25-cv-04210-NYW, 2026 WL 468582, at *3-4 (D. Colo. Feb. 18, 2026) (granting a petitioner's writ of habeas corpus

8

where ICE failed to provide the petitioner with notice of revocation and informal interview in violation of 8 C.F.R. § 241.4(l)); *Nguyen v. Albarran*, No. 1:25-cv-1926 CSK, 2026 WL 184513, at *7 (E.D. Cal. Jan. 23, 2026) (finding that "ICE's failure to comply with 8 C.F.R. § 241.13 violated [the] petitioner's due process rights" thus granting the petitioner's writ of habeas corpus and ordering his release); *Rodriguez Romero v. Ladwig*, No. 25-1106-JWD-EWD, 2026 WL 321437, at *11, 17 (M.D. La. Feb. 6, 2026) (agreeing with "the majority of courts throughout the country" that "ICE's regulations–8 C.F.R. § 241.4, 241.13–mandate important procedural safeguards against wrongful detention" and thus ordering the petitioner's release); *Nguyen v. Lyons*, No. 25-cv-631-MSM-PAS, 2026 WL 125093, at *4 (D.R.I. Jan. 16, 2026) (finding that "the government is not free to ignore their own regulations or the Fifth Amendment due process protections in order to re-detain [a petitioner] while they are simply waiting for ICE to determine whether a travel document is approved" and thus ordering the petitioner's release (quotation omitted)); *N.A.L.R. v. Bondi*, No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *2-3 (S.D. Ind. Oct. 23, 2025) (granting a petition for writ of habeas corpus and ordering a petitioner's release where the respondents violated the procedural protections offered by 8 C.F.R. § 241.4); *Phongsavanh v. Williams*, No. 4:25-cv-00426-SMR-SBJ, 2025 WL 3124032, at *6 (S.D. Iowa Nov. 7, 2025) (granting a petition for writ of habeas corpus and ordering a petitioner's release where the petitioner had been on supervised release for 25 years and the government failed to follow the regulations set forth in 8 C.F.R. § 241.13(i)); *Villanueva v. Tate*, 801 F.Supp.3d 689, 705 (S.D. Tex. 2025) (finding that the government violated the petitioner's due process rights by re-detaining him without complying with 8 C.F.R. §

9

241.4(l) and that the only way to vindicate the petitioner's due process rights was to order his release from custody).

Respondents cite several cases in support of the contention that release is an improper remedy for procedural violations of immigration regulations, none of which is persuasive. For example, Respondents cite *Olmedo v. ICE*, No. 25-3159-JWL, 2025 WL 2821860, (D. Kan. Oct. 3, 2025). [#9 at 8-9] There, the petitioner was detained and denied a custody review, a violation the court found was not harmless. *Id.* at 1, 3. Nonetheless, the court found that the appropriate remedy was to provide the petitioner with a custody review hearing since that was the process that was denied, rather than to immediately release him. *Id.* at *3. Unlike here, however, the petitioner in that case had never been granted supervised release, and thus had not been under supervision for years without apparent violation. *Id.* at *1. Thus, the *Olmedo* court's conclusion as to the appropriate remedy does not overcome the weight of the vast majority of courts which have found that release is the appropriate remedy for violations of 8 CFR 241.13 and 241.4.

Respondents also cite *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025). [#9 at 9] In that case, respondents represented that they interviewed the petitioner on the day he was detained, provided the reasons for his detention, and later interviewed the petitioner in a setting where he could submit information concerning his detention. *Bahadorani*, 2025 WL 304893, at *2. Accordingly, the court there found that the government substantially complied with 8 C.F.R. § 241.13(i), even though the petitioner had not previously been given a formal notice of the reasons for revocation. *Id.* The court there found that issuing a writ of habeas corpus was

10

inappropriate because the error that the petitioner claimed occurred was nothing beyond a mere failure to following the regulations "to a T." *Id.* at *3. Here, by contrast, Respondents did not simply fail to follow the regulations "to a T," they apparently chose to ignore the regulations entirely.

The other cases Respondents cite are similarly unpersuasive. *See Medina v. Noem*, 794 F.Supp.3d 365, 382 (D. Md. 2025) (concluding that, where a petitioner had been provided with a notice of revocation of release but had not been given an informal interview within two weeks, the appropriate remedy was not release because the petitioner had not pointed to any authority showing that the remedy for this type of violation is release from detention); Umanzor-*Chavez v. Noem*, No. SAG-25-01634, 2025 WL 2467640, at *5–8 (D. Md. Aug. 27, 2025) (finding that, where a petitioner had been provided with a notice of revocation of release but it was signed by a deportation officer who did not have the necessary authority, this procedural violation did not implicate constitutional concerns warranting habeas relief); *Tanha v. Warden, Baltimore Det. Facility*, No. 25-cv-02121-JRR, 2025 WL 2062181, at *6 (D. Md. July 22, 2025) (finding that, where the petitioner had been provided a notice of revocation of release but had not yet been provided an informal interview, release from detention was an inappropriate remedy); *I.V.I. v. Baker*, No. JKB-25-1572, 2025 WL 1811273, at *3 (D. Md. July 1, 2025) (finding release inappropriate, at the time of the petition, where the government arrested the petitioner outside of the removal period and provided him with documentation in a language he could not understand because this procedural violation was easily remedied). None of these cases resemble the fact pattern present in this case. And, as detailed above, in the numerous cases that do reflect the procedural circumstances

11

present here, courts have ordered release.  Accordingly, the Court is unpersuaded by Respondents' legal arguments.

Relevant to the regulations at issue here, Respondents contend only that Mr. Virachak's release on supervision was revoked.  [#9 at 3]  Though they argue that they provided Mr. Virachak, approximately one month after his re-arrest, with a "Notice of File Custody Review," Respondents do not contend that this Notice provided any information about why Mr. Virachak's supervised release was revoked.  [*Id.* at 4]  Respondents do not contend that Mr. Virachak was afforded an informal interview where he had the opportunity to respond to any reason for the revocation, nor do they contend that they have any plan to provide Mr. Virachak with such an interview.

Thus, Mr. Virachak has demonstrated that, following his initial arrest, he was subject to an order of supervision and that his release was never revoked by any official with authority or according to the prescribed legal process.  Given that Respondents have not been provided the Court with any documentation of the revocation of Mr. Virachak's supervised release, nor any information as to who authorized a revocation or for what reason, the Court finds that Respondents have failed to follow the regulations outlined in 8 C.F.R. § 241.4(l) and thus have failed to afford Mr. Virachak due process.  *See*, *e.g.*, *Villanueva*, 801 F. Supp. 3d at 699-700 ("In the absence of some evidence showing that [the petitioner's] Order of Supervision was lawfully revoked by someone with the authority to do so and for a reason lawfully permitted, the government has failed to show that it afforded [the petitioner] with due process in connection with the purported revocation of his Order of Supervision.").  And Respondents identify no basis to believe that Mr.

12

Virachak now poses a danger to the public.[3]  Thus, pursuant to the APA, revocation of Mr. Virachak's release and his current detention are contrary to law and must be rescinded and set aside.  *See Izquierdo Navarro*, 2026 WL 468582, at *3 ("[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release." (citing *Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025; *Nguyen v. Hyde*, 788 F.Supp.3d 144, 152-53 (D. Mass. 2025); *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026); *Funes v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896, at *25 (S.D.N.Y. Nov. 24, 2025); *Grigorian v. Bondi*, No. 25-cv-022914-RAR, 2025 WL 2604573, at *9-10 (S.D. Fla. Sept. 9, 2025))).  The Court thus respectfully GRANTS Mr. Virachak's habeas petition.  Given this Order, the Court does not address the independent bases for release that Mr. Virachak asserts in his Petition.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Virachak's Petition is **GRANTED**.    [#1] Respondents shall release Mr. Virachak from custody within 24 hours of this Order, pursuant to the conditions of the Order of Supervision under which he was operating prior to his re-arrest on January 7, 2026.

DATED:  March 17, 2026                                    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[3] While Respondents recount Mr. Virachak's criminal history [#9 at 2], those events occurred prior to the government's initial decision to release Mr. Virachak on an order of supervision, and Respondents do not identify any changed circumstances that would appear to warrant the revocation of Mr. Virachak's supervision and his re-detention without due process.